UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re:

Miracle Bass,                                              Chapter 7

     Debtor.                                         Case No.: 19-50264-SMS

_____/                     Ad. Pro. No. 19-05223-SMS

Strategic Funding Source, Inc.,
    d/b/a Kapitus, Inc.

        Plaintiff,
    v.

Miracle Bass,

        Defendant.

_____/

### **NOTICE OF FILING**

    Plaintiff, Strategic Funding Source, Inc. d/b/a Miracle Bass, gives notice of filing the following attached Affidavits in Support of its Motion for Default Final Judgment:

1.     Affidavit as to Amounts Due and Owing.

2.     Non-Military Affidavit as to Miracle Bass.

Dated: July 16, 2019.

        CARLTON FIELDS, P.A.

        */s/ Justan C. Bounds*
        Justan C. Bounds
        Georgia Bar No. 339789
        jbounds@carltonfields.com
        1201 West Peachtree Street - Suite 3000

Atlanta, Georgia 30309
404-815-3400
404-815-3415 (fax)

*Attorneys for Plaintiff Strategic Funding Source,*
*Inc. d/b/a Kapitus, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2019, I (1) electronically filed the foregoing with the

Clerk of Court by using the Court's CM/ECF system thereby serving any registered users in this

case and (2) served the foregoing via U.S. Mail to:

Miracle Bass
1022 Allegiance Drive
Locust Grove, GA 30248

*Debtor/Defendant*

/s/ Justan C. Bounds
Justan C. Bounds
Georgia Bar No. 339789
jbounds@carltonfields.com
1201 West Peachtree Street -Suite 3000
Atlanta, Georgia 30309
404-815-3400

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re:

Miracle Bass,                                            Chapter 7

    Debtor.                                          Case No.: 19-50264-SMS

_____/

Strategic Funding Source, Inc.,                          Ad. Pro. No. 19-05223-SMS
    d/b/a Kapitus, Inc.

        Plaintiff,

   v.

Miracle Bass,

        Defendant.

_____/

## **AFFIDAVIT AS TO AMOUNTS DUE AND OWING**

STATE OF NEW YORK

COUNTY OF NEW YORK

      BEFORE ME, the undersigned authority, personally appeared David Wolfson, who, after

being first duly sworn, deposes and says that:

      1.     I am the Vice President of Risk Management and Asset Recovery of Plaintiff.

I have personal knowledge of the facts set forth in this Affidavit, I am over the age of

eighteen (18) years, and I am competent and authorized to make this Affidavit.

      2.     Affiant is authorized to make this Affidavit on behalf of Plaintiff, Strategic

Funding Source, Inc., d/b/a Kapitus, Inc.  In the regular performance of my job functions, I

118664613.1

am familiar with business records maintained by Plaintiff. In connection with making this Affidavit, I have acquired knowledge of the matters stated herein by examining these business records.

3.      I understand that Miracle Bass (the "Debtor") is a natural person and was and is a resident of the state of Georgia residing at 1022 Allegiance Drive, Locust Grove, GA 30248.

4.      I understand that Bass LLC, d/b/a Bass BBQ-N-Soul Food ("Bass BBQ") is a Georgia corporation.

5.      I understand that at all times relevant hereto, the Debtor was and is Bass BBQ's 100% owner, the Debtor controlled Bass BBQ, and made all decisions and statements to Plaintiff relevant to the issues herein.

6.      Pursuant to the Revenue Based Factoring (RBF/ACH) Agreement dated April 16, 2018, the Security Agreement and Guaranty, and Appendix A: regarding the Fee Structure, all of which are expressly incorporated by reference into the Revenue Based Factoring (RBF/ACH) Agreement (collectively, the "Agreement"), Plaintiff purchased Bass BBQ's business receivables in the amount of $91,000.00 (the "Receipts Purchased Amount") in exchange for the purchase price of $70,000.00 (the "Purchase Price"). A copy of the Agreement is attached to the Complaint filed on June 4, 2019 (initiating the above-captioned adversary proceeding) (the "Complaint"), as Exhibit A.

7.      The Debtor signed the Agreement in both his corporate capacity as owner/member, and in his individual capacity as guarantor.

8.      Under the Agreement, the Debtor and Bass BBQ agreed to irrevocably

2

authorize only one depositing account acceptable to Plaintiff (the "Account") to remit 17.1%

(the "Specified Percentage") of Bass BBQ's future receipts, accounts, contact rights and

other obligations arising from or relating to the payment of monies from Bass BBQ's

customers or third-party payors, whether paid by cash, check, electronic transfer or other

method (collectively, the "Receivables"), until such time as Plaintiff receives payment in full

of the Receipts Purchased Amount.

9.     The Debtor and Bass BBQ also agreed and authorized Plaintiff to ACH Debit

$505.00 (the "Specified Daily Amount") from Bass BBQ's Account each business day until

Plaintiff had received payment in full of the Receipts Purchased Amount.

10.    The Agreement further emphasized that **"ANY MISREPRESENTATION**

**MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT**

**MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR**

**INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FINANCING."**

Agreement at p. 2 (emphasis in original).

11.    Plaintiff justifiably relied on these representations by the Debtor and Bass BBQ

in agreeing to transfer the Purchase Price to Bass BBQ.

12.    The Debtor and Bass BBQ also made the following representations and

warranties to Plaintiff via the Agreement, each of which Plaintiff relied upon to lend money to

Bass BBQ:

> 2.1    **<u>Financial Condition and Financial Information.</u>**  [Merchant
> represents, warrants and covenants that as of this date and during the term
> of this Agreement:] [i]ts bank and financial statements, copies of which
> have been furnished to SFS, and future statements which will be furnished
> hereafter at the discretion of SFS, fairly represent the financial condition
> of Merchant at such dates, and since those dates there has been no material

adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise SFS of any material adverse change in its financial condition, operation or ownership. SFS may request statements at any time during the performance of this Agreement and the Merchant shall provide them to SFS within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

2.7    **Daily Batch Out.**    Merchant will batch out receipts with the Processor on a daily basis.

2.9    **No Bankruptcy or Insolvency.**    As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing Protections 2 and 3 are immediately invoked.

2.10    **Additional Financing. Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than SFS without their written permission.**

2.11    **Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with or adverse to the interest of SFS.

2.12    **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

13.    Prior to the transferring the Purchase Price to Bass BBQ on April 18, 2018, the Debtor stated to Plaintiff, on a recorded Pre-Funding call, that Bass BBQ owed no balance to another working-capital provider and was not in arrears on any business

obligations.  The Debtor also stated that he did not anticipate closing Bass BBQ for any reason over the next 12 months. In addition, the Debtor stated that he was not planning to file for bankruptcy and that he was unaware of any reason to believe that Bass BBQ or the Debtor would need to file for Bankruptcy protection in the foreseeable future.  The Debtor acknowledged that any untruthful statement he made on the call could give rise to a fraud claim.  The relevant portions of the Pre-Funding call are transcribed below:

> Plaintiff Representative: "Do you anticipate on closing your business for any reason over the next 12 months including planned vacations, renovations, seasonalities or slow business periods?"
>
> Debtor: "No."
>
> Plaintiff Representative: "Have you been planning to file or do you know of any reason to believe that your business will need to file for bankruptcy protection in the foreseeable future?"
>
> Debtor: "No ma'am."
>
> Plaintiff Representative: "Are you in arrears on any loans or with any financial institutions?"
>
> Debtor: "No ma'am."
>
> Plaintiff Representative: "Do you currently have a balance with any other working-capital provider?"

Debtor: "No ma'am."

Plaintiff Representative: "Do you recognize that any false statement or misrepresentation may constitute fraud and could subject you to legal action?

Debtor: "Yes ma'am."

14.      Upon information and belief, at the time the Agreement was being negotiated, Bass BBQ had one or more outstanding balances owed to at least one working-capital provider and was behind on payments to financial institutions and other creditors.   In addition, other representations by the Debtor in the Agreement may be inaccurate.

15.      According to Debtor's Schedules E/F (Doc. No. 1), Debtor owes Collinear Funding Network $62,000.   Upon information and belief, Collinear Funding Network is a working capital provider, and this Debt is likely also owed by Bass BBQ.   Upon information and belief, the Debtor and Bass BBQ owed an outstanding balance to Collinear Funding Network at the time the Debtor executed the Agreement and participated in the Pre-Funding call.   Alternatively, Bass BBQ and the Debtor entered into an arrangement, agreement, or commitment with Collinear Funding Network in the form of a purchase of receivables or a loan to the business subsequent to executing the Agreement, and did not obtain Kapitus' written permission to do so.

16.      Debtor also lists a $10,000 claim for First Data Merchant Services, LLC. Upon information and belief, First Data Merchant Services, LLC is a working capital provider, and this debt is also owed by Bass BBQ.   Upon information and belief, the Debtor and Bass BBQ owed an outstanding balance to First Data Merchant Services, LLC at the time

6

the Debtor executed the Agreement and participated in the Pre-Funding call. Alternatively, Bass BBQ and the Debtor entered into an arrangement, agreement, or commitment with First Data Merchant Services, LLC in the form of a purchase of receivables or a loan to the business subsequent to executing the Agreement, and did not obtain Kapitus' written permission to do so.

17.    Debtor also owes a substantial debt to the Georgia Department of Revenue in the amount of $2,763,140.13 ("DOR Claim"). *See* POC #2-1. The DOR Claim is for "sales" taxes dating back to 2012. Upon information and belief, the DOR Claim is a joint debt with Bass BBQ, and was an outstanding and significant debt owed by the Debtor and Bass BBQ at the time the Debtor executed the Agreement and participated in the Pre-Funding Call.

18.    Similarly, Debtor owes a substantial debt to the Internal Revenue Service, and lists a $60,000 claim on his Schedules E/F ("IRS Claim"). Upon information and belief, the IRS Claim is a joint debt with Bass BBQ that was outstanding at the time the Debtor executed the Agreement and participated in the Pre-Funding Call.

19.    Despite stating that he did not anticipate closing his business within the next twelve months during the Pre-Funding call conducted on April 18, 2018, upon information and belief, Debtor closed or sold Bass BBQ on or before December 2018.

20.    Further, Debtor represented and warranted in the Agreement that Bass BBQ was not insolvent, and that the financial statements he provided in support of the Agreement fairly represented the financial condition of Bass BBQ. These warranties and representations were knowingly false, as Bass BBQ had significant tax issues dating back to at least 2012 that were knowingly and intentionally not revealed to Kapitus.

118664613.1

7

21.    Plaintiff is entitled to recover its attorney's fees in connection to this dispute pursuant to Section 3.3 of the Agreement.  The breakdown of Plaintiff's claim is as follows:

| | |
|---|---|
| **Judgment** | **$64,452.18** |
| **Interest @ 6% (Virginia Legal Rate)** | **$1,973.23** |
| **from 1/16/19 to 7/16/19** | |
| **Total Claim** | **$66,425.41** |

22.    The Debtor personally guaranteed Bass BBQ's full performance of all terms and obligations under the Agreement.  Agreement, p. 6-7.

23.    The Plaintiff is owed the above sums pursuant to a April 16, 2018 Revenue Based Factoring Agreement, plus post-judgment interest.

FURTHER AFFIANT SAYETH NOT.

_____
David Wolfson

STATE OF NEW YORK
COUNTY OF NEW YORK

Signed and sworn to (or affirmed before me on _7/17/201 9_ (date) by David Wolfson.

_____ (Signature)
Notary Public (or title/rank of other officer)

(STAMP OR SEAL)

SHANTEL BOYD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BO6364530
Qualified in New York County
My Commission Expires 09-18-2021

8

118664613.1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re:

Miracle Bass,                                          Chapter 7

    Debtor.                                        Case No.: 19-50264-SMS
_____/
Strategic Funding Source, Inc.,                        Ad. Pro. No. 19-05223-SMS
    d/b/a Kapitus, Inc.

        Plaintiff,
    v.

Miracle Bass,

        Defendant.
_____/

### NON-MILITARY AFFIDAVIT REGARDING DEFENDANT MIRACLE BASS

BEFORE ME, the undersigned authority, personally appeared Donald R. Kirk, who, after being first duly sworn, deposes and says that:

1.    I am the Attorney for the Plaintiff.  I have personal knowledge of the facts set forth in this Affidavit, I am over the age of eighteen (18) years, and I am competent and authorized to make this Affidavit.

2.    According to Michael V. Sorrento, Director of Defense-Manpower Data Center, Defendant, Miracle Bass, is not in the military service of the United States.  *See* Military Status Report attached hereto as **Exhibit A**.

3.    Defendant, Miracle Bass, was not on active duty at the time of service of process herein, is not now on active duty in the armed services of the United States, and is not entitled to

the relief afforded by the Soldiers and Sailors Civil Relief Act of 1940, 50 U.S.C. § 501, et seq.

**This ends my affidavit.**

_____
Donald R. Kirk

STATE OF FLORIDA             )
COUNTY OF HILLSBOROUGH       )

    The foregoing instrument was sworn to and subscribed before me this *17th* day of July
___, 2019, by Donald R. Kirk, who is personally known to me, and acknowledges that he signed
the foregoing Affidavit and that the contents of same are true and correct to the best of his
knowledge and belief.

My Commission Expires: 10/23/2021

_Karly A. Thompson_
Printed Name: _Karly A. Thompson_
Notary Public
State of Florida

KARLY A. THOMPSON
Notary Public – State of Florida
Commission # GG 136032
My Comm. Expires Oct 23, 2021
Bonded through National Notary Assn.

113181896.v1

# Exhibit A

Department of Defense Manpower Data Center

Results as of : Jul-16-2019 12:02:38 PM

SCRA 4.11



## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:              XXX-XX-5094
Birth Date:       May-XX-1973
Last Name:        BASS
First Name:       MIRACLE
Middle Name:      K
Status As Of:     Jul-16-2019
Certificate ID:   RYZB4HKX6R6LND7

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of
the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and
Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.